# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Certain Underwriters at Interest at Lloyd's of London, | : : | CIVIL CASE |
| Plaintiff, | : | |
| v. | : : | |
| United Parcel Service of America, Inc., | : | |
| Defendant. | : | NO. 13-1087 |

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**                                                                                                   **October 28, 2013**

## I.    INTRODUCTION

Plaintiffs ("Underwriters") are a collection of individuals and entities who contribute to an insurance policy that provided property liability insurance to First State Depository, LLC ("First State"). First State is a Delaware company that is in the business of providing coin and special metals services, including custody, shipping, and accounting to both individual and commercial entities. Defendant, United Postal Service ("UPS"), is a Georgia corporation in the business of delivering packages and providing specialized transportation and logistics services.

Plaintiffs allege that UPS contracted with First State to deliver 27 packages containing specialty gold and silver coins on various dates from February 2, 2013 to March 28, 2013, but that these packages were never delivered to the intended recipients. Plaintiffs allege that UPS picked up the packages from First State's Wilmington facility, subsequently scanned them at an intermediate UPS facility, and sometime thereafter lost and/or stole the packages before they were delivered to the intended recipient. After investigating First State's losses and as a result of insurance payments made to First State, Plaintiffs acquired all of First State's rights against UPS or any other culpable third party regarding the lost packages.

1

## II. PROCEDURAL HISTORY

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

Plaintiffs filed a Complaint on February 28, 2013, alleging state law claims of breach of contract, negligence, negligent supervision, and fraudulent conversion for each of the lost packages. ECF 1. Specifically, for each lost package, Plaintiffs alleged that Defendant breached its contract with First State by failing to successfully deliver the subject packages under the terms of the shipping agreement. Id. Moreover, for each lost package, Plaintiffs alleged that Defendant was negligent in failing to use the ordinary care of a reasonably prudent package delivery company in both ensuring safe delivery of packages and in selecting and training its employees to safely deliver packages. Id.

Plaintiffs argued in the alternative that each lost package was fraudulently converted by UPS or its employees. Id.

On March 27, 2013, UPS filed a Motion to Dismiss Plaintiffs' Complaint arguing that all of Plaintiffs' claims were preempted by the Carmack Amendment. ECF 4. On April 10, 2013, Plaintiffs responded to UPS's Motion to Dismiss by arguing that their fraudulent conversion claims constituted an exception to Carmack preemption. ECF 6. In response, UPS filed a Reply Memorandum on April 17, 2013, arguing that Plaintiffs had not alleged sufficient facts to support their causes of action under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and that

Plaintiffs had used facts and allegations not present in the Complaint to refute UPS's Motion to Dismiss. ECF 7.

In light of the above filings, this Court entered an Order dated May 8, 2013, holding that Plaintiffs' fraudulent conversion claims were not pled with sufficient particularity to meet Rule 9(b)'s heightened pleading standard for claims sounding in fraud. ECF 8. As a result, this Court permitted Plaintiffs to amend their Complaint.

On May 29, 2013, Plaintiffs filed an Amended Complaint. ECF 9. The Amended Complaint contained allegations about four additional lost packages. Id. The Amended Complaint also asserted additional facts regarding an alleged pattern of unlawful conversions and UPS's refusal to assist in investigating the lost packages. Id. In response, UPS filed a Motion to Dismiss Plaintiffs' Amended Complaint on June 12, 2013, arguing again that the Carmack Amendment preempted the claims, and also that Plaintiffs had failed to allege sufficient facts to satisfy Rules 12(b)(6) and Rule 9(b). ECF 10. On June 26, 2013, Plaintiffs responded to UPS's Motion to Dismiss Plaintiffs' Amended Complaint claiming that they had alleged sufficient facts to satisfy their pleading requirements, and that they established a "true conversion"[1] in order to circumvent Carmack preemption of their state law claims. ECF 11. UPS filed a Reply Memorandum on July 3, 2013, denying that Plaintiffs established a true conversion. ECF 12.

### III. THE PARTIES' ARGUMENTS

This cases raises three issues, each of which the parties dispute. Those issues are as follows:

---

[1] A "true conversion" is a judicially created narrow exception to a common carrier's potential exposure under the Carmack Amendment in circumstances where the common carrier converts/steals a shipper's goods. The courts have limited this exception to "true conversions," or conversions where a common carrier itself appropriates a shipper's property for the carrier's own use or gain. For a more detailed discussion of this exception, see below, Section IV.

**A. Does the Carmack Amendment Preempt Plaintiffs' Claims?**

UPS argues that the Carmack Amendment, which applies to all packages shipped via interstate ground transportation by a common carrier, preempts all of Plaintiffs' claims. Specifically, UPS argues that the Carmack Amendment exclusively governs a carrier's liability and a shipper's remedies arising out of contracts for the interstate ground shipment of property. See ECF 4 (Mot. to Dismiss Pls.' Compl.)[2] at 6. Plaintiffs counter by arguing that while the Carmack Amendment does limit a carrier's liabilities, certain types of willful misconduct on the part of the carrier (such as intentional theft) invalidate any liability limitations. See ECF 6 (Mem. of Law in Opp'n to UPS's Mot. to Dismiss) at 5. Furthermore, Plaintiffs contend that UPS committed a true conversion in this case, which prevents Defendant from limiting its liability. Id. at 6.

**B. If Plaintiffs' Claims are not Preempted, Did Plaintiffs Allege Sufficient Facts in the Amended Complaint to Satisfy their Pleading Requirements?**

UPS alternatively argues that Plaintiffs have failed to allege sufficient facts to support their causes of action under Fed. R. Civ. P. 12(b)(6) as well as under Fed. R. Civ. P. 9(b)'s heightened pleading standard for causes of action sounding in fraud. Specifically, UPS asserts that Plaintiffs failed to identify a specific date, time, or place of the alleged fraud, or otherwise provide a measure of substantiation to the allegations of fraud as is required under Rule 9(b). See ECF 10-1 at 6 (Mot. to Dismiss Pls.' Am. Compl.) at 5. Plaintiffs counter by arguing that the numerous facts in their Amended Complaint detailing the contents and value of each allegedly stolen package, where each package was received by UPS in the manner and pattern in which all

---

[2] In its Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Complaint (ECF 10-1), UPS adopts the arguments from its Motion to Dismiss Plaintiffs' Complaint (ECF 4). Plaintiffs similarly incorporated arguments from their opposition to UPS's original Motion to Dismiss. ECF 11 at 4 n.3. This Court thus considers arguments from briefing related to both Motions to Dismiss.

the packages were stolen, and the location of the last UPS scan for each package, are sufficient to meet the Rule 12(b)(6) pleading requirements. See ECF 11 (Mem. of Law in Opp'n to UPS's Mot. to Dismiss Pls.' Am. Compl.) at 5. Further, Plaintiffs argue that they have met Rule 9(b)'s heightened pleading standard by explicitly alleging the date, time, and place of the alleged conversions, as well as by providing the exact and short time frame in which all the losses occurred. Id. at 7.

### C. If Plaintiffs Have Satisfied Their Pleading Requirements, Have Plaintiffs Properly Relied on Agency Principles to Establish a True Conversion by UPS?

Plaintiffs rely on agency principles to support their assertion that by alleging conversion by UPS's employees, Plaintiffs have sufficiently alleged a true conversion by UPS itself for the purpose of triggering the true conversion exception to Defendant's ability to limit its liability. Id. at 8. UPS counters by citing cases that have narrowly construed the true conversion exception, and have established that a carrier may properly limit its liability where the conversion in question is by third parties, including the carrier's own employees. See ECF 12 (Reply Mem. in Further Support of Defendant's Mot. to Dismiss Pls.' Am. Compl.) at 3.

### IV. ANALYSIS

Congress passed the Carmack Amendment in 1906 in order to establish uniform rules of liability for carriers and shippers participating in ground transportation of goods in interstate commerce.[3] In Adams Express Company v. Croninger, the Supreme Court observed that Congress enacted the Carmack Amendment in 1906 to "take possession of the subject [of

---

[3] The Carmack Amendment addresses liability imposed, "for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading … ." 49 U.S.C.A. § 14706 (West).  The Carmack Amendment does not cover tortious conduct outside of these parameters; therefore it does preempt causes of action arising out of such conduct.

5

interstate carriers' liability for lost or damaged property], and supersede all state regulation ... ." 226 U.S. 491, 505-06 (1913); see also Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 345 (D.N.J. 2001). A state law cause of action is therefore preempted by the Carmack Amendment if the cause of action involves loss of goods or damage to goods caused by the interstate shipment of those goods by a common carrier. Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 345 (D.N.J. 2001).

### A. The Carmack Amendment Preempts Plaintiffs' Claims

Plaintiffs' claims are preempted by federal law under the Carmack Amendment. The relevant language of the Carmack Amendment states:

> [A] carrier…may…establish rates for the transportation of property…under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

49 U.S.C. § 14706(c)(1)(A). In one of the Supreme Court's earliest cases interpreting the Carmack Amendment, the Court recognized Congress' intent to occupy the field and to preempt any state laws that established carrier liabilities in conflict with the Carmack Amendment. The Court explained,

> Prior to that amendment, the rule of carriers' liability for an interstate shipment of property, as enforced in both Federal and state courts, was either that of the general common law…or that determined by the supposed public policy of a particular state, or that prescribed by statute law of a particular state. Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject…That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. **Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it**. Only the silence of Congress authorized the exercise of the police power of the state upon the

> subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist.

Adams Express Co. v. Croninger, 226 U.S. 491, 504-06 (1913) (emphasis added). Since then, the Supreme Court has reiterated and reaffirmed the preemptive effect of the Carmack Amendment, particularly as to state laws and contracts governing damages for lost or improperly delivered goods. See Hughes v. United Van Lines, 485 U.S. 913 (1988) (denying petition for writ of certiorari requesting review of the Seventh Circuit's holding that the Carmack Amendment bars a shipper from pursuing state and common law remedies against a carrier for damages to goods shipped in interstate commerce); New York, New Haven & Hartford R.R. Co. v. Nothnagle, 346 U.S. 128, 131 (1953) ("With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."); Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29-30 (1936) (holding a carrier's tariff setting its liability for failure to make a timely shipment was preempted by the Carmack Amendment); Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 603 (1915) (holding that special regulations and policies of particular states upon the subject of the carrier's liability for loss or damage to interstate shipments, and the contracts of carriers with respect thereto, have been superseded).

The Third Circuit has not yet decided a case involving preemption under the Carmack Amendment. However, ten Courts of Appeal have considered and decided the issue in line with the Supreme Court, holding that the Carmack Amendment preempts state law.[4] Judge Davis and

---

[4] The First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Courts of Appeal have held that the Carmack Amendment preempts state law claims pertaining to shippers and carriers in interstate commerce. See Rini v. United Van Lines, Inc., 104 F.3d 502, 505 (1st Cir. 1997); Cleveland v. Beltman N. Am. Co., 30 F.3d 373, 377 (2d Cir. 1994); Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 706 (4th Cir. 1993); Moffit v. Bekins Van Lines Co., 6 F.3d 305, 307 (5th Cir. 1993); W.D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 421 (6th Cir.

Judge Padova of this Court have also considered the issue and similarly upheld the Carmack Amendment's preemptive effect on state law claims for negligence and breach of contract. See Thyssen Inc. v. Norfolk Southern Corp., No. Civ. A. 01-5136, 2003 WL 21660039, *1 (E.D. Pa. July 16, 2003) (J. Davis) ("Here, because Thyssen seeks damages stemming from a shipping agreement, the Carmack Amendment governs the parties' rights and liabilities, and preempts Thyssen's claims for negligence and breach of contract."); Faust v. Clark and Reid Co., Inc., No. Civ. A. 94-4580, 1994 WL 675132, *1 (E.D. Pa. Nov. 23, 1994) (J. Padova).

In light of the uniformity in which circuit courts have upheld the Carmack Amendment's preemptive force, as well as two judges of this Court's adoption of the same, the undersigned concludes that the Carmack Amendment preempts Plaintiffs' claims.

### B. The True Conversion Exception Does Not Apply

Plaintiffs acknowledge the preemptive effect of the Carmack Amendment, but argue that their allegations fall within the scope of the true conversion exception to Carmack preemption, which applies when the common carrier converts the shipper's property for its own use – in other words, when the common carrier commits a true conversion. However, the true conversion exception applies only to liability limitations of the Carmack Amendment and thus has no application to the Plaintiffs' allegations.

Plaintiffs correctly state that an exception exists to certain provisions of the Carmack Amendment. Courts have held that the Carmack Amendment's liability limitations do not apply when the common carrier has committed a true conversion of goods. Contrary to Plaintiffs' contention, however, the cases which created and shaped the true conversion exception did not

---

1972); Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987); Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir. 1984); Hughes Aircraft v. N. Am. Van Lines, Inc., 970 F.2d 609, 610, 613 (9th Cir. 1992); Underwriters at Lloyds of London v. N. Am. Van Lines, Inc., 890 F.2d 1112, 1113 (10th Cir. 1989) (en banc); Smith v. United Parcel Serv., Inc., 296 F.3d 1244, 1246-47 (11th Cir. 2002).

involve or implicate the preemptive effect of the Carmack Amendment. Rather the cases addressed whether to enforce the liability limitations agreed to by the parties. In fact, courts have only recognized the true conversion exception in causes of action under the Carmack Amendment where no preemption concerns existed.

For example, in Glickfield v. Howard Van Lines, 213 F.2d 723, 724 (9th Cir. 1954), Glickfield shipped numerous goods from New York to Los Angeles, which were allegedly damaged and stolen by Howard Van Lines, the common carrier Glickfield contracted with to deliver the goods. Glickfield filed suit to recover the full value of the damaged and stolen goods, even though both parties agreed in the shipping agreement to limit Howard's liability to a released value of 30 cents per pound. Id. at 725. Despite the Court's finding that Howard did not convert the goods in question, the Ninth Circuit explained that Glickfield would have been able to avoid the liability limitation had Howard stolen the goods for its own use. The Court noted that it would be inequitable and against public policy to allow a carrier to limit its liability when the carrier itself converts/steals a shipper's property because it would permit carriers to profit from their own misconduct. Id. at 727. In explaining the narrow scope of the conversion exception, the Glickfield court held that the exception is triggered only when a "true conversion" has occurred, stating:

> The conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties *or even by its own employees*. In the latter circumstance, while the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

Id. (emphasis added).

The First Circuit has also recognized the true conversion exception to a common carrier's liability limitations and further enforced the narrow scope of the exception. In Kemper Ins. Co. v. Fed. Express Corp., 252 F.3d 509, 515 (1st Cir. 2001), the First Circuit relied on Glickfield in a case very similar to the present suit, and limited the application of the exception to instances of true conversions for the carrier's own gain or use. In Kemper, an insurer filed suit as a subrogee against Federal Express ("FedEx"), a common carrier that lost the insured's packages containing jewelry. Id. at 511. Kemper's claims were based in tort and contract law, and sought to invalidate the $100 limitation of liability provided for in the relevant shipping document. Id. The Kemper court held: "Because Kemper has made no allegation that FedEx appropriated the property *itself*, or profited from its conversion, the claim does not fit within the [conversion exception]... ." Id. at 516 (emphasis in original). The Court continued:

> From these comments, and from the almost universal position of other federal courts to have addressed this issue, we conclude that—whether or not the conversion exception to the released value doctrine includes certain willful conduct not technically a conversion and not benefitting the carrier—**willful blindness to the activity of third parties (even employees) does not qualify**.[5]

Id. (emphasis added).

Although as noted, supra, the Third Circuit has yet to address the issue of Carmack preemption, it has recognized the existence of an exception to a common carrier's ability to limit its liability via the Carmack Amendment when the carrier commits a true conversion. In American Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310, 312 (3d Cir 1992), the Plaintiff, Cyanamid, filed suit under the Carmack Amendment to recover the full value of

---

[5] The Kemper court interpreted the conversion exception in relation to the released value doctrine (governing air transportation) rather than the Carmack Amendment. However, the court deemed the difference irrelevant, observing that "the constraints on the limitation clauses are the same for motor carriers covered by the Carmack Amendment as they are for air carriers covered by the released value doctrine." Kemper, 253 F.3d at 514.

packages destroyed during the course of delivery by Defendant, New Penn.[6] The lawsuit arose out of New Penn's failure to prevent Plaintiff's shipment of vaccines from freezing. The bill of lading between the two parties had an explicit limitation of liability, but also contained specific instructions to protect the vaccines from freezing. New Penn picked up the vaccines but failed to protect them from freezing. As a result, the vaccines were delivered in a worthless condition having been destroyed by the cold. Cyanamid brought suit claiming the full value of the destroyed vaccines. New Penn moved for partial summary judgment to limit its liability in accordance with the released value provision in the bill of lading that was made pursuant to the Carmack Amendment. Id.

In fact, Cyanamid unsuccessfully argued that New Penn must be held liable because it intentionally deviated from the terms of the bill of lading by failing to protect the vaccines from freezing. Id. at 315. In affirming the District Court's rejection of this argument, the Third Circuit held that "nothing short of intentional destruction or conduct in the nature of theft of property will permit a shipper to circumvent the liability limitations in a released value provision." Id. at 315-16.

Plaintiffs' reliance on the true conversion exception fails, because it applies only to determine whether a court should enforce certain liability limitations, but has no legal bearing on the preemptive effect of the Carmack Amendment. Nevertheless, as discussed supra, federal courts have consistently held that state law claims pertaining to the liability of interstate carriers and shippers are entirely preempted by the Carmack Amendment.

Even if Plaintiffs brought a cause of action under the Carmack Amendment itself, thus eliminating UPS's preemption objections, Plaintiffs allegations would nevertheless fail as a

---

[6] The Third Circuit did not face a preemption question in this case because the Plaintiff did not bring any state law claims, instead alleging causes of action under the Carmack Amendment.

matter of law since their allegations fail to meet the heightened pleading requirements of Rule 9(b), and agency principles do not establish a true conversion as a matter of law.

## V. CONCLUSION

For the foregoing, this Court Defendant's Motion to Dismiss is GRANTED because the Carmack Amendment preempts Plaintiffs' claims. An appropriate order follows.

O:\CIVIL 13\13-1087 certain underwriters v. united parcel\13cv1087.memo.mtd.docx